**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

KENNETH GLENN EVANS,

    Plaintiff,

    v.

SGT. UPOLE, et al.,

    Defendants.

Civil Action No.: MJM-24-1221

**<u>MEMORANDUM OPINION</u>**

Self-represented plaintiff Kenneth Glenn Evans initiated this civil rights action by filing a Complaint pursuant to 42 U.S.C. § 1983 against Lieutenant Joseph Upole, Sergeant Eric Smith, Lieutenant David Barnhart, Lieutenant Patrick Speir, Correctional Officer II Dean Rounds, former Case Manager Mary Johnson, Correctional Officer II Eric Wariner, Lieutenant Scott Beeman, former Warden Jeffrey Nines, and Correctional Officer II Samanatha Koch (collectively, "Defendants").[1] ECF No. 1. On March 14, 2025, Defendants moved to dismiss the Complaint or for summary judgment to be granted in their favor.[2] ECF No. 30. Evans opposes Defendants' dispositive motion. ECF No. 33. Upon review of the record, exhibits, and the applicable law, the Court deems a hearing unnecessary. *See* Loc. R. 105.6. (D. Md. 2025). For reasons that follow, the Court will grant Defendants' motion for summary judgment for Evans's failure to exhaust administrative remedies.[3]

---

[1] The Clerk shall be directed to amend the docket to reflect Defendants' full and correct names on the docket. *See* ECF No. 30.

[2] Defendants also moved to seal medical records submitted in support of their dispositive motion, as well as a motion for leave to file excess pages. ECF Nos. 28, 29. Both motions shall be granted.

[3] Service was not accepted on behalf of defendant Samantha Koch, who is no longer employed by the Department of Public Safety and Correctional Services. ECF No. 9 at 2. Koch remains unserved and has not responded to the Complaint. Nevertheless, as the Complaint is being dismissed for Evans's failure

### I. Factual Allegations

At all times relevant to the Complaint, Evans was in the custody of the Maryland Division of Corrections ("DOC") and housed at North Branch Correctional Institution ("NBCI"). ECF No. 1 at 1–2. Defendants were correctional officials and employees of the Maryland Department of Corrections. *Id*.

During October of 2023, Evans was housed in housing unit H-U(3) B-Tier, and worked as a dietary worker on H-U(1) D-Tier, where he distributed and collected trays, cleaned, and took sick call request slips. *Id*. at 3. While he was working in the administrative segregation section, some inmates showed him "knives that they had made out of steel from the bunks and light fixtures." *Id*. at 4. Subsequently, an inmate told Evans that he and other inmates were planning on killing two inmates and a correctional officer. *Id*. at 5. On October 23, 2023, Evans approached Officer Wariner and told him he needed to speak to "Intel" about what he had heard. *Id*. at 6. Wariner told Evans he would inform the sergeant in charge of H-U(3). *Id*. Later, when Evans was in the day room, Officer Wariner took him to Sgt. Smith's office, and Evans told Smith he needed to talk to "Intel" about inmates planning to kill people. *Id*. Smith told him he could either "keep [his] mouth shut and go back to the tier" or disclose the information and be placed on disciplinary segregation. *Id*. Evans chose to remain quiet and returned to his cell. *Id*. On October 24, 2025, Evans submitted a Request for Administrative Procedure ("ARP") to Officer Wariner regarding his attempts to speak with Intel about the inmates with knives. *Id*. at 7. He was then told to go to the library to speak to "Intel" Lieutenant Barnhart, but Barnhart did not show. *Id*.

---

to exhaust his administrative remedies prior to filing suit, the dismissal applies to his claims against Koch, as well.

On October 26, 2023, Sgt. Smith told Evans that Lt. Spears wanted to speak with him, and Evans was seen by other inmates going into the sergeant's office, putting him at risk. *Id*. Evans told Lt. Spears that he needed to talk to "Intel" and why, and Lt. Spears asked him what he wanted in return for the information. *Id*. at 8. Evans asked to move to H-U(4) and to be assigned a different job. *Id*. Evans disclosed cell numbers of some inmates who had knives but did not offer further information. *Id*.

On October 28, 2023, Evans wrote to Sgt. Upole, the day shift sergeant for H-U(3), regarding his request to speak with Intel and why. ECF No. 1 at 9. He also wrote to Lt. Barnhardt. *Id*. On October 30, 2023, Evans was on the phone in the day room when he was "approached by some inmates letting [him] know they was [sic] told [he] was seen in c/o's office talking to Sgt. Smith." *Id*. at 10. The inmates told Evans he must refuse housing on the tier or he would be "going off the tier through medical," which Evans took as a threat. *Id*. Evans went to the duty officer, Ms. Koch, and told her he needed to speak to Sgt. Upole due to an emergency. *Id*. Ms. Koch told him to return to his cell, even though he said he had been threatened. *Id*. Evans refused to go to his cell and was placed in the holding cell instead. *Id*. at 11. Sgt. Upole and Sgt. Smith arrived and discussed the matter with him. *Id*. Sgt. Upole told him, "I'm giving you an order to go back to the tier. If you choose not to I will put your name on the pass list and put 'Intell' next to your name." *Id*. Upole, Smith, and Koch then left and returned a few minutes later to tell Evans that "Intel" had declined to talk with him. *Id*. Inmates could see the conversation, and overheard Koch stating that "the last thing he said was his life has been threatened." *Id*. at 12. Evans then agreed to go back on the tier, but Upole stated that he would not be permitted to do so for his own protection and wrote him a ticket for refusing housing. *Id*. As he was being processed in lock-up, Evans told Officer Rounds why he was there and told him that he should

not be placed with another inmate due to threats, but Rounds put him in a cell with another inmate anyway. ECF No. 1 at 13.

On November 5, 2023, Evans was attacked by his cellmate and injured his shoulder. *Id*. He does not provide further details of the alleged attack. On November 8, 2023, Evans was taken to a room to speak with Lt. Barnhart in view of other inmates. *Id*. at 14. Barnhardt agreed that Evans should not have been placed in lock-up for trying to help. *Id*. On November 9, 2023, Evans was moved to D-tier administrative segregation, the same tier about which he had provided cell numbers of inmates with knives. *Id*. at 15. Evans immediately began to receive verbal and written death threats. *Id*. He gave a copy of a note with a written threat to Officer Mills, along with a request to speak with Barnhardt. *Id*. On November 15, 2023, Evans had an administrative segregation review with Case Manager Ms. Johnson, who stated that Evans was in administrative segregation because he was a "snitch." ECF No. 1 at 15-16.

On November 19, 2023, an inmate on D-tier got out of his handcuffs and attacked an officer. *Id*. at 17.

## II. Standard of Review

Defendants move to dismiss the Complaint for failure to state a claim or alternatively for summary judgment. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may seek dismissal for "failure to state a claim upon which relief can be granted . . . ." To survive the challenge, the non-moving party must have pleaded facts demonstrating "a claim to relief that is plausible on its face." *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must

show there is "more than a sheer possibility that a defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"*[P]ro se* filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (second alteration in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). "[L]iberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff,' but only to determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. The Salvation Army*

*S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (internal quotation marks omitted) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider judicially noticed facts and documents integral to, and explicitly relied on in, the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)); Fed. R. Evid. 201(b). When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Federal Rule of Civil Procedure 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court notified Evans that he had the right to respond to Defendants' motion, that the motion could be construed as one for summary judgment, and that if Evans did not file a timely and adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond. ECF No. 32. Moreover, Defendants' motion, which identifies summary judgment as possible relief, provided sufficient notice for Evans to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Evans has filed a response in opposition to Defendants' motion. ECF No. 33. Thus, the Court is satisfied that Evans received notice that Defendants' motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion. The Court will resolve the motion under Rule 56, where appropriate.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 252. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is appropriate. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III. Discussion

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. As noted, the Court will decide the motion under Rule 56 where appropriate. Defendants argue that (1) Evans has failed to exhaust administrative remedies; (2)

7

Evans has failed to state a claim upon which relief may be granted; (3) Defendants are entitled to Eleventh Amendment and qualified immunity; and (4) Evans has not established standing or subject matter jurisdiction as to certain claims. ECF Nos. 30 at 2 and 30-1.

### A. Exhaustion

The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Therefore, a claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *See Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing

*Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion") (alteration in original)).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215–216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (recognizing that exhaustion provides prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners "pursue administrative grievances until they receive a final denial of their claim[s], appealing through all available stages in the administrative process" so that the agency reaches a decision on the merits. *Chase*, 286 F. Supp. 2d at 530; *see also Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust where he did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after prison authority denied relief"); *Griffin v. Bryant*, 456 F.4th 328 (4th Cir. 2022) (recognizing PLRA's "strict" requirement to exhaust all available administrative remedies").

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see also Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("The . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines . . . ." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 90 (quoting *Pozo*, 286 F.3d at 1024). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (finding that "the inmate cannot be required to exhaust [administrative remedies] . . . when prison officials prevent inmates from using the administrative process").

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S."), § 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction [DOC] . . . ." C.S. § 10-206(a). Regulations promulgated by DPSCS concerning the ARP process define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC

official or employee. *See* C.S. § 10-206(a). When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO. However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b).

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP request with his facility's "managing official," COMAR 12.02.28.05(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame. The prisoner has 30 days to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[4] When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a).

---

[4] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due. COMAR 12.07.01.05(B)(2).

If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing . . . ." C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge ("ALJ") with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07–.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07(D); Md. Code Ann., State Gov't, § 10-206(a)(1).

A decision of the ALJ denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. §§ 10-209(b)(2), (c); COMAR 12.07.01.10(B).

The statute provides for judicial review. C.S. § 10-210. But "[a] court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided" in C.S. §§ 10-201 through 10-210.

In the Complaint, Evans states that he filed a grievance, but that nothing was done and he was "waiting on the result from H-Q." ECF No. 1 at 2. In addition, he attaches copies of several ARPs to his Complaint. ECF No. 1-1. ARP NBCI-1394-23, filed on November 16, 2023, addresses the series of events described in the Complaint and also maintains that the ARP "is not in regard to adjustment" and "has not been addressed." *Id*. at 2–5. Nevertheless, ARP NBCI-1394

was dismissed for procedural reasons, noting that the issue was previously resolved or repetitive. *Id*. ARP NBCI-1395-23 was also filed on November 16, 2023, and complains that the ARP coordinator continues to dismiss Evans's ARPs as repetitive, even though the problem remains unresolved; he asks to speak with the ARP coordinator's supervisor. *Id*. at 1. ARP NBCI-1395-23 was also dismissed as repetitive or previously resolved, and includes a handwritten note stating, "you may appeal ARP's to HQ." *Id*. On November 21, 2023, Evans submitted ARP NBCI-1393-23, regarding the events described in the Complaint. *Id*. at 6–8. The ARP was dismissed as previously resolved and repetitive, and includes a handwritten note stating that "transfer decisions are made by case management and not subject[] to ARP process." *Id*. All of the ARP responses contain a printed statement notifying Evans of his right to appeal. *Id*. at 1, 2, 6.

Defendants also submitted copies of ARPs filed by Evans regarding the events at issue, including NBCI-1332-23 filed on November 10, 2023, and NBCI-1393-23 filed on November 21, 2023. ECF No. 30-5 at 22-29. In ARP NBCI-1332-23, Evans complains that he "cannot seek administrative remedy while on disciplinary seg. in which [he] should not have been place[d] on in the first place." *Id*. at 22. Both of these ARPs were dismissed for the procedural reasons that they were previously resolved, repetitive, or previously addressed through the ARP process. *Id*. at 22, 27. The response to the ARP NBCI-1393-23 includes a handwritten note advising Evans that "you spoke to Intel and were placed in a single cell Ad-Seg. Transfer decisions are made by case management and not subjected to ARP process." *Id*. at 27. Both ARPs advised that "[Evans] may appeal this response by following the procedure prescribed on the back of this form." *Id*. at 22, 27.

Defendants also submit the declaration of Kristina M. Donnelly, Special Assistant to the Director of Patuxent Institution and Pamela White, Administrative Aide of the IGO. ECF Nos. 30-3, 30-4. Donnelly declares that she has searched the records of the Headquarters ARP and Inmate

Grievance Program records and found no record of an ARP appeal filed by Evans. ECF No. 30-3. White declares that she searched the records of the IGO for any appeals or grievances filed between October 1, 2023, and November 30, 2024, and found none. ECF No. 30-4.

In his opposition, Evans states that he is "not denying the fact [h]e did not exhaust the 'ARP' process," but that he "was not given the opportunity to exhaust all remedies, [because he was] behind the door on Admin Seg" at the time he filed suit. ECF No. 33. Evans claims that he has been writing complaints constantly, but that the paperwork "disappears." *Id.*

Contrary to Evans' contention that he is unable to access the ARP process due to his assignment to administrative segregation, the evidence shows that Evans filed numerous ARPs during that period of time. Evans states that he was moved to D-tier administrative segregation on November 10, 2023. ECF No. 1 at 14. He filed ARPs on November 10, 2023 (NBCI-1395-23 and NBCI-1332-23), November 16, 2023 (NBCI-1394-23), and November 21, 2023 (NBCI-1393-23), all of which were dismissed with notification that he could appeal the dismissals. ECF Nos. 1-1 at 1, 2, and 6; 30-5 at 22. The declarations of Donelly and White show that he did not appeal any ARP to the Commissioner nor did he file a grievance with the IGO. ECF Nos. 30-3 and 30-4.

To the extent Evans was under the mistaken impression that he was not permitted to file ARPs while in disciplinary segregation, such a misunderstanding does not excuse the exhaustion requirement. *See* ECF No. 30-5 at 22 (ARP NBCI-23-1332 complaining that he cannot seek administrative remedies while on disciplinary segregation). "Simple unawareness [of an administrative remedy process] . . . does not rise to the level of unavailability. An unavailable remedy is one 'that was not discovered, and which *could not have been discovered through reasonable effort*, until it was too late for it to be used[.]'" *Williams v. Carvajal*, 63 F.4th 279, 290

14

(4th Cir. 2023) (quoting *Gobert v. Lee Cnty.*, 510 F.3d 1312, 1324 (11th Cir. 2007) (emphasis added)).

Here, the ARP process was available to Evans, and he did, in fact, use it. He has not alleged that he was somehow prevented from appealing any of his dismissed ARPs. As such, Evans has failed to exhaust his administrative remedies, and his Complaint must be dismissed on that basis.[5]

### VI. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment will be granted. The Complaint will be dismissed for failure to exhaust administrative remedies.

A separate Order follows.

_3/2/26_
Date

Matthew J. Maddox
United States District Judge

---

[5] Because the Complaint is being dismissed for failure to exhaust administrative remedies, Defendants' remaining arguments need not be addressed.